UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ST. LOUIS HEART CENTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-958-NAB |
| | ) | |
| GILEAD PALO ALTO, INC., *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO
DISMISS OR, IN THE ALTERNATIVE, STRIKE THE CLAIMS SET FORTH
IN THE COMPLAINT**

**I.      INTRODUCTION**

Plaintiff St. Louis Heart Center, Inc.'s ("Plaintiff") Complaint[1] is defective as a matter of

law and should be dismissed.   At the outset, each of the Complaint's three causes of action:

(1) violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227;

(2) common law conversion; and (3) violation of the Missouri Merchandising Practices Act

("MPA"), are defective, as they all stem from the sole allegation that in 2010, Defendants Gilead

Palo Alto, Inc. ("Gilead") and The Peer Group, Inc. ("The Peer Group," or collectively,

"Defendants") sent Plaintiff an unsolicited one-page fax.  *See* Complaint at ¶ 11 and Exh. 1.

This allegation, however, is both false and insufficient to support Plaintiff's claims and should be

stricken.

---

[1] The Complaint styled as a "Class Action Petition" is attached to the Notice of Removal and appears on this Court's docket at Doc # 1-1 [PageID# 20-38].

Indeed, Plaintiff's claim that the fax was unsolicited is "obviously false" – a standard met here as this is not the first time Plaintiff has sued The Peer Group alleging (incorrectly) that Plaintiff received an unsolicited fax.[2]  In *St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.*, Case No. 4:12-cv-2224-JCH (E.D. Mo.), Plaintiff also claimed that it had received an "unsolicited" fax from The Peer Group, as well as Forest Pharmaceuticals.  As it did here, Plaintiff initially asserted the same three claims – TCPA, MPA and common law conversion.[3]  However, once Plaintiff's claims were directly contradicted with evidence that Plaintiff had, in fact, given The Peer Group its express consent to communicate by fax, Plaintiff dropped all allegations of receiving an unsolicited fax.[4]  As the *Forest Pharmaceuticals* case provided uncontested evidence that Plaintiff consented to receiving faxes from The Peer Group (such as the fax attached to the present Complaint), Plaintiff cannot maintain its allegation that the fax from Defendants was unsolicited.  As such, the obviously false allegation that Plaintiff received an unsolicited fax should be stricken.[5]

Moreover, the TCPA only prohibits the transmission of unsolicited fax advertisements.  The fax attached to the Complaint here, however, is <u>not</u> an advertisement, but rather, an

---

[2] In fact, Plaintiff has filed several lawsuits asserting the very same TCPA and related claims against other pharmaceutical companies/entities.  Please see discussion at footnote 6.

[3] The similarities between this case and *Forest Pharmaceuticals* include not only the same three claims, but also the same addressee whose name is identified on the fax itself, Dr. Ronald Weiss.  *Compare* Complaint at Ex. 1 *with Forest Pharmaceuticals*  (Doc # 32, Exhs. 1-40, First Amended Class Action Petition filed February 26, 2013).

[4] The defendants, including The Peer Group, in the *Forest Pharmaceuticals* case filed a motion for summary judgment.  *Forest Pharmaceuticals, Inc.*, Case No. 4:12-cv-2224-JCH (Doc # 47-49 filed April 3, 2013).  In response to the motion for summary judgment, Plaintiff amended its complaint to remove any allegation of having received an unsolicited fax due to, among other things, the Affidavit of Jo Anne Jensen, former Vice President of The Peer Group.  In it, Ms. Jensen attested to Plaintiff's consent to receive faxes from The Peer Group and attached business records evidencing Plaintiff's consent.  *See id.* (Doc # 48-3, filed April 3, 2013).  Faced with this uncontested evidence, Plaintiff abandoned its allegation that the faxes from The Peer Group were unsolicited.  *See id.* (*Compare Forest Pharmaceuticals*, Doc # 58, Third Amended Class Action Petition filed April 29, 2013, *with* Doc # 44 Second Amended Class Action Petition filed March 22, 2013).

[5] *See, e.g., Totalplan Corp. of America v. Lure Camera Ltd.,* 613 F. Supp. 451, 461-462 (W.D.N.Y. 1985) (recognizing court's authority to strike "obviously false" allegations contained in a complaint).

- 2 -

informational message asking its addressee, Dr. Weiss, to attend at no charge a "medical discussion" to "review clinical data." Complaint at Exh. 1. This type of informational message does not fall within the reach of the TCPA.

Finally, Plaintiff's two remaining claims are defective as a matter of law. Plaintiff's conversion claim should be dismissed because it fails to meet the minimum standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Likewise, Plaintiff's claim under the MPA should be dismissed because the alleged transmission of an unsolicited fax is not an unlawful practice under the MPA. *See Missouri ex rel. Nixon v. Progressive Bus. Pub., Inc.*, 504 F. Supp. 2d 699, 707 (W.D. Mo. 2007).

For all these reasons, Plaintiff's Complaint should be dismissed or, in the alternative, stricken.

## II.    FACTUAL BACKGROUND

Plaintiff is a Missouri corporation and an experienced TCPA litigant with several ongoing or recently dismissed TCPA actions on this Court's docket. Complaint at ¶ 7.[6]

In this action, Plaintiff alleges that "[o]n December 9, 2010, Defendants sent 1 unsolicited facsimile to Plaintiff in St. Louis County, Missouri." Complaint at ¶ 11 and Exh. 1 (attaching a copy of the facsimile). Plaintiff further describes this "1 unsolicited facsimile" as

---

[6] *See, e.g.*, *St. Louis Heart Ctr., Inc. v. Jackson & Coker Locumtenens, LLC*, Case No. 4:11-cv-01193 (E.D. Mo.) (filed in state court on May 16, 2011, and subsequently removed on July 7, 2011); *St. Louis Heart Ctr., Inc. v. Vein Centers For Excellence, Inc.*, Case No. 4:12-cv-00174 (E.D. Mo.) (filed in state court on December 23, 2011, and subsequently removed on January 31, 2012); *St. Louis Heart Ctr., Inc. v. Cintas Corporate Services, Inc.*, Case No. 4:12-cv-01547 (E.D. Mo.) (filed in state court on July 12, 2012, and subsequently removed on August 28, 2012, and dismissed on June 10, 2013); *St. Louis Heart Ctr., Inc. v. Harris Medical Associates, LLC*, Case No. 4:12-cv-01555 (E.D. Mo.) (filed in state court on July 12, 2012, and subsequently removed on August 28, 2012); *St. Louis Heart Ctr., Inc. v. Caremark, L.L.C.*, Case No. 4:12-cv-02151 (E.D. Mo.) (filed in state court on October 4, 2012, and subsequently removed on November 16, 2012); *St. Louis Heart Ctr., Inc. v. Forest Pharmaceuticals, Inc.*, Case No. 4:12-CV-02224 (E.D. Mo.) (filed in state court on October 4, 2012, and subsequently removed on November 30, 2012).

"material advertising the commercial availability of any property, goods or service." *Id.* at ¶¶ 11 and 16. While the Complaint's description of the "1 unsolicited facsimile" is quite sparse, the fax itself is attached to the Complaint and incorporated by reference. *Id.* at ¶ 11 and Exh. 1.

The fax is a single-page, letter format, invitation from The Peer Group President Kathleen Bressette addressed to Dr. Ronald Weiss. Complaint at Exh. 1. The fax invites Dr. Weiss to "join several of [his] physician colleagues for a 60-minute Power Lunch interactive medical discussion *via* webconference entitled, 'Efficacy and Safety of Ranexa®,'" which was scheduled for several dates during December 2010. *Id.*

Furthermore, the fax informed recipients that "[t]his program is being provided by Gilead Sciences and will review clinical data of Ranexa®." *Id.* Recipients were also informed that the program "will be led by Dr. Barry Greenberg, M.D., Professor of Medicine, Director, Advanced Heart Failure Treatment Program of the University of California, San Diego," and that during the program "[a] Peer Group professional moderator will facilitate discussion with Dr. Barry Greenberg." *Id.* In addition, the fax notified recipients that "program participants will be asked to complete a survey" which "may be used by Gilead Sciences to address educational needs in the future." *Id.*

Of significance, the fax also instructed recipients that if they "no longer wish[ed] to receive fax messages from The Peer Group," they could call or fax a provided toll-free number:

> If you no longer wish to receive fax messages from The Peer Group for Ranexa please call 1.888.PEER.321 or fax us at 1.800.929.8290.
>
> If you no longer wish to receive a fax messages from The Peer Group, please call 1.888.PEER.321 or fax us at 1.800.929.8290.

*Id.* This double notice enabled recipients to request exclusion from either faxes "for Ranexa" or "fax messages from The Peer Group" in general. Notably absent from Plaintiff's Complaint is any mention that Plaintiff requested exclusion from either type of fax.

Notwithstanding this omission, the Complaint's first cause of action alleges that Defendants violated the TCPA and is premised on the allegation that Plaintiff received from Defendants an unsolicited fax advertisement in violation of the statute.  Complaint at ¶¶ 48-49. Plaintiff's second cause of action for conversion asserts that by sending an unsolicited fax the Defendants converted Plaintiff's property (*i.e.*, paper and toner) associated with the receipt of the fax.  *Id.* at ¶¶ 55 and 57.  Plaintiff's third cause of action arises under the Missouri Merchandising Practices Act, MO. Rev. Stat. §§ 407.010 *et seq.*, ("MPA") and alleges that, by sending this single fax, Defendants violated public policy and therefore the MPA.  *Id.* at ¶ 67.

For each of these three counts, Plaintiff asks the Court to certify an alleged class of similarly-situated plaintiffs.  Complaint at ¶¶ 35, 51 and 63.

## III.    STANDARD

### A.  Motion To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation mark omitted).

**B.  Motion To Strike**

Pursuant to Rule 12(f) of the Federal Rule of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A district court "enjoys liberal discretion under Rule 12(f)" to determine whether the motion should be granted.  *Nationwide Ins. Co. v. Cent. Missouri Elec. Co-op., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001).

## IV.   ARGUMENT

**A.  Plaintiff's TCPA Claim Should Be Dismissed Or, In The Alternative, Stricken.**

The TCPA "proscribes sending unsolicited advertisements to fax machines."  *Mims v. Arrow Fin. Servs.*, 132 S.Ct. 740, 745 (2012) (citing 47 U.S.C. § 227(b)(1)(C)).  "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5).  To state a TCPA claim under 47 U.S.C. § 227(b)(1)(C), Plaintiff must show that Defendants "(1) used a telephone facsimile machine, computer or other device to send a facsimile; (2) the facsimile was unsolicited; and (3) the facsimile constituted an advertisement."  *St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.*, 2013 WL 1076540, *2 (E.D. Mo. 2013) (quoting *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008).  Here, Plaintiff's claim falls short of the final two prongs.

### 1.   Defendants' fax is not an advertisement under the TCPA.

Not every fax is an advertisement.  "[T]he FCC has clarified that four types of messages do not fall under the purview of the TCPA: (1) informational messages; (2) transactional messages; (3) non-commercial messages from non-profit organizations; and (4) non-

advertisement messages with an incidental amount of advertising." *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, 2013 WL 486207, *3 (D.N.J. Feb. 6, 2013) (citing FCC Rules and Regulations at *25,972–73; *N.B. Indus. v. Wells Fargo & Co.*, 2010 WL 4939970 (N.D. Cal. Nov 30, 2010)).  The fax in this case falls under the exception for "informational messages."[7]

A broad range of faxes qualify as "informational messages exempted from the TCPA." *See Physicians Healthsource, Inc.*, 2013 WL 486207 at *4.  Such faxes can include "industry news articles, legislative updates, and employee benefit information that do not promote the commercial availability or quality of a good or service," as well as faxes that contain information sent for an educational purpose.  *Id.* (citing FCC Rules and Regulations at *25,972–73); *Holmes v. Back Doctors Ltd.*, 2009 WL 3425961, *1 (S.D. Ill. Oct. 21, 2009) (finding faxes sent to a target audience for educational purposes not an advertisement).

In addition, faxes that invite recipients to attend a ceremony or event are among informational messages exempt from the TCPA.  In *Dang v. XLHealth Corp.*, 2011 WL 553826 (N.D. Ga. Feb. 7, 2011), for example, the court held that a fax which "alerted the recipient" to a "free seminar" was not an advertisement under the TCPA but instead a communication that "seeks to inform the recipient":

> Instead of "promoting goods and services" in the commercial sense, Defendants' communication alerted the recipient that a free seminar would be offered, wherein the recipient could learn more about the Defendants' billing processes and thereby speed up payment to the recipient.  Cmpl., Dkt. No. [1-2], Ex. A at 7.  As well, the recipient was given the opportunity to meet the Defendants' representatives. This type of communication does not detail the "commercial availability or quality" of the healthcare plan, but rather seeks to inform the recipient.

---

[7] In the event the Court determines that the fax contains any amount of advertising, then the exception for "non-advertisement messages with an incidental amount of advertising" applies as well.

*Id.* at \*4; *see also NB. Indus. v. Wells Fargo & Co.,* 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) (fax notifying the recipient of an upcoming award ceremony and asking for applications is not an advertisement).

Other federal courts have examined informational faxes related to medical research and concluded that those faxes did not constitute advertisements under the TCPA.  *See*, *e.g.*, *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Institute, Inc.*, 2006 WL 1766812 (W.D. Mo. June 23, 2006) (holding that a fax message "announc[ing] the existence of a clinical drug trial" and seeking "individuals willing to serve as test subjects" did not constitute an advertisement under the TCPA), *aff'd*, 222 Fed. Appx. 530 (8th Cir. 2007); *Phillips Randolph Enters., LLC v. Adler–Weiner Research Chicago*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (holding that a fax message which promoted "a research study" and discussion did not constitute an advertisement under the TCPA).

The District Court's decision in *Phillips Randolph* is particularly instructive.  In that case, the court dismissed the plaintiff's TCPA claim after holding that the fax at issue was not an "advertisement."  526 F. Supp. 2d at 853.  The fax in the *Phillips Randolph* case invited a specific, qualified group of business owners to participate in a "research discussion." *Id.* at 852-853.  Although the plaintiff argued "that the fax advertises a 'service' in the form of a 'research discussion' on a healthcare program," that argument was rejected by the court.  *Id.* at 853. Instead, the court recognized that the promoted event constituted a research study and was not a "commercially available service."  *Id.*  Thus, the court held the fax was not an advertisement under the TCPA.  *Id.* at 852-53.

In a recent noteworthy decision, a federal district court in New Jersey addressed faxes that are similar to the instant fax, and held that the faxes did not constitute an advertisement.  In

*Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, 2013 WL 486207 (D.N.J. Feb.

6, 2013), *motion for leave to amend granted* (June 6, 2013), the plaintiff alleged that the

defendant pharmaceutical companies had violated the TCPA by faxing two unsolicited

advertisements to one of its physicians.  *Id.* at *1.  Defendants moved to dismiss the claim on the

basis that the faxes were informational and therefore exempted from the Act.  *Id.*

As described by the court, the faxes at issue in *Physician Healthsource* provided

reimbursement information related to the drug Levaquin and directions for the recipient to obtain

"full prescribing information":

> The fax is entitled "Important Reimbursement Information" on the top of the
> page.  The main body of the fax includes the name of the drug, Levaquin, and the
> fact that it is now "Available on UnitedHealthcare PDL Tier 2." As further
> indicated in small print on the bottom of the fax, Levaquin changed from being
> labeled as a Tier 3 drug to a Tier 2 drug; consequently, it is now available for a
> lower copayment. For further information, the recipient of the fax is asked to
> contact a consumer communications center and that full prescribing information is
> available from a representative.  Finally, at the margins of the fax, it states that the
> fax was "Sent on behalf of Ortho–McNeil–Janssen Pharmaceuticals, Inc." It also
> contains Defendants' marketing logos and an opt-out clause indicating how a
> recipient can have its fax number removed from the list of recipients.

*Id.* at *1.  After reviewing the content of the faxes, the court held that "**the faxes are indeed**

**informational and that they include only an incidental amount of commercial material**"

and, "**as a matter of law, those faxes are not actionable under the TCPA**" and dismissed the

claim.  *Id.* (emphasis added).  The court further explained that the faxes, despite providing details

relating to drug prescribing information, "are not advertisements" since they "do not advertise

either the commercial availability or the quality of Levaquin; rather, they simply notify the

recipient of Levaquin's reclassification and provide the recipient with up-to-date information."

*Id.* at *5.  The court in *Physician Healthsource* also rejected the argument that "Defendants

would obtain an ancillary commercial benefit as a result of sending the fax."  *Id.*  As the court

explained, the "link between Defendants receiving any commercial benefit from sending this type of information to prescribing doctors is too tenuous for the Court to speculate." *Id.* at *5.

Similar to the faxes discussed above, Defendants' fax inviting Dr. Weiss to participate in a medical discussion is an informational message, not an advertisement.  Complaint at Exh. 1. The fax is a one-page letter addressed to Dr. Weiss inviting him to attend a speaker program in which an expert speaker will present "clinical data" on Ranexa®.  The fax notified Dr. Weiss that during the program, "[a] Peer Group professional moderator" would "facilitate discussion," and that program participants may be asked to complete a survey that would be used "to address educational needs in the future."  The fax, by its terms, is facilitating the medical community's exchange of information.  It does not promote the commercial availability of Ranexa®.   Indeed, it does not identify what Ranexa® is, how it is used, or the conditions under which it should be prescribed.  Nor is there any suggestion that the parties enter into a transaction.  Rather, the fax is simply an informational message.

One contrary decision reached by this Court must be distinguished.  In *St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.*, 2013 WL 1076540, *2 (E.D. Mo. 2013), the Court held that faxes regarding the hypertension drug Bystolic contained "enough in the way of product-driven content . . . to raise an issue of fact whether" they constituted an advertisement under the TCPA.  That decision, however, focused on specific characteristics of the fax messages in that case which are not present here.  Specifically, the Court cited in support of its refusal to dismiss the action the fact that "'Important Safety Information' concerning Bystolic appears at the bottom of the fax messages—information bearing no clear relationship to a 'medical discussion' but rather to Bystolic as a hypertension treatment" and that "[a] link to Bystolic's website is provided for 'full Prescribing Information,' *i.e.*, seemingly, as information for a

prospective prescribing physician . . . ." *Id.* at *3.  Based on these unique characteristics, the Court declined to dismiss the claim.

These same characteristics, however, are <u>not</u> present in the fax attached to the Complaint. Complaint at Exh. 1.  As noted above, the fax in this case is devoid of prescribing information. It does not contain any safety instructions or links to an external website regarding the product. Indeed, it does not even identify the purpose for Ranexa®.   There is nothing in the fax which proposes a commercial transaction, and the fax does not contain "enough in the way of product-driven content" to justify its treatment as an advertisement.[8]

Even if the Court concludes that the fax somehow contains an advertisement, that does not end the inquiry.  The advertisement cannot be incidental, but instead must be sufficient in scope to support a violation of the Act.  *See Cynthia S. Holmes, P.C. v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843, 851 (S.D. Ill. 2010) ("It is clear that in Holmes's view a fax containing any advertising content should be treated as an advertisement, but this is not consistent with the Commission's regulations, which authorize informational faxes to contain incidental advertising. . . . Looking at the four corners of the faxes  . . . and acknowledging that in fact they do manifest to some extent a commercial purpose, the Court nonetheless reaffirms its earlier determination that the faxes are proper.").[9]  Likewise, the informational message in a fax is not drowned out simply because the fax includes a slogan or marketing logo.  *Physicians Healthsource, Inc.*, 2013

---

[8] The Court in *Forest Pharmaceuticals* may have found helpful the recent decision in New Jersey, which reached a different conclusion.  *Compare Physicians Healthsource*, 2013 WL 486207 (D.N.J. Feb. 6, 2013) *with Forest Pharmaceuticals*, 2013 WL 1076540, *3 (E.D. Mo. March 13, 2013) (identifying cases discussed). Briefing on the motion to dismiss in *Forest Pharmaceuticals* appears to have been completed before the Court in *Physician Healthsource* released its decision.

[9] *See also Holmes v. Back Doctors, Ltd.*, 2009 WL 3425961, *4 (S.D. Ill. Oct. 21, 2009) ("Additionally, only about one-seventh of the space in each fax is devoted to advertising for the Fairview Heights Spine & Injury Center, which, as noted, is the name under which Back Doctors does business, and the faxes are sent by Back Doctors on its own behalf.  Under these circumstances, the Court concludes that Back Doctors' faxes do not constitute advertising within the meaning of the TCPA.").

WL 486207 at *5 (the inclusion of "marketing logos does not transform faxes into advertisements."); *NB. Indus.*, 2010 WL 4939970 at *8 (holding "the inclusion of Wells Fargo's and USPAACC's logos and website addresses is incidental information that does not transform the messages into advertisements").  There is nothing in this case, however, to suggest the fax contains an advertisement, incidental or otherwise.

Thus, viewed from any angle, the fax is an informational message exempt from the Act, and Plaintiff's TCPA claim should be dismissed.

### 2.  Defendants' facsimile was not unsolicited.

A motion to strike should be granted where the allegations contained in the pleading are "obviously false."  *See*, *e.g.*, *Totalplan Corp. of America v. Lure Camera Ltd.*, 613 F. Supp. 451, 461-462 (W.D.N.Y. 1985) (finding allegation "obviously false" because "the same plaintiff" made a contrary allegation in a prior pleading); *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 900 (S.D. Ohio 1999) (granting motion to strike allegations where the same allegation had already been dismissed from the litigation).

Throughout the Complaint, Plaintiff claims that it received an "unsolicited fax" from Defendants.  *See* Complaint, *passim*.  However, Plaintiff has already abandoned the very same allegation in another TCPA case involving two of the same parties.  Like here, in *Forest Pharmaceuticals*, Plaintiff (St. Louis Heart Center, Inc.) also claimed it had received an "unsolicited" fax from the identical defendant, The Peer Group.  On a motion for summary judgment, the *Forest Pharmaceuticals* defendants submitted uncontested evidence, an affidavit of Jo Anne Jensen, former Vice President of The Peer Group, attesting to Plaintiff's consent to communicate with The Peer Group by fax and, furthermore, attached supporting business records.  *See Forest Pharmaceuticals* (Doc # 48-3, Page ID # 671-676, Affidavit of Jo Anne Jensen filed April 3, 2013).  As Ms. Jensen explained, The Peer Group confirmed on August 12,

2010, "that Dr. Weiss wished to continue to receive communications from Peer through facsimile transmissions." *Id.* [Doc # 48-3, PageID # 673 and 676, Affidavit of Jo Anne Jensen at ¶ 18 and Exhibit 1].

Faced with this uncontested evidence, Plaintiff removed its allegations of unsolicited faxes from the Complaint. *Compare Forest Pharmaceuticals*, Doc # 58, Third Amended Class Action Petition filed April 29, 2013, *with Forest Pharmaceuticals*, Doc # 44, Second Amended Class Action Petition filed March 22, 2013). The operative *Forest Pharmaceuticals* Complaint now only alleges that the faxes were sent "without the proper opt-out notice" and asserts that this notice is required "even for faxes sent by consent or pursuant to an established business relationship." *Id.* [Doc # 62, PageID # 834, Fourth Amended Class Action Petition at ¶ 2].

In light of *Forest Pharmaceuticals*, Plaintiff should not be permitted to plead contrary allegations in this case. Here, Plaintiff asserts that it received "1 unsolicited facsimile" from Defendants (including The Peer Group) on December 9, 2010. Complaint at ¶ 11. Notably, the date of this fax (December 9, 2010) comes after the date (August 12, 2010) on which The Peer Group confirmed that Dr. Weiss wished to continue receiving faxes and, in fact, ***falls squarely within the time frame*** during which Plaintiff claims to have received faxes in the *Forest Pharmaceuticals* case (August 3, 2010 and January 3, 2012). *Id.*; *Forest Pharmaceuticals* [Doc # 48-3, PageID # 673 and 676, Affidavit of Jo Anne Jensen at ¶ 18 and Exhibit 1; Doc # 62, PageID # 835, Fourth Amended Class Action Petition at ¶ 10]. Because Plaintiff in the *Forest Pharmaceuticals* case has abandoned its claim of receiving unsolicited faxes from The Peer Group both before and after the date of the fax here, Plaintiff is thereby wholly precluded from making the same obviously false allegation of receiving an unsolicited fax in this case.

In addition, a motion to strike "should be granted if it 'may have the effect of making the trial of the action less complicated, or [it] may have the effect of otherwise streamlining the ultimate resolution of the action.'" *Gannon v. Yamaha Motor Corp., U.S.A.*, 2008 WL 2401587, *1 (E.D. Mo. June 10, 2008) (quoting *United States v. Dico, Inc.*, 189 F.R.D. 536, 541 (S.D. Iowa 1999)); *see also Lankford v. Webco, Inc.*, 2007 WL 465637, *2 (W.D. Mo. Feb. 8, 2007) (quotation omitted) (noting that a motion to strike should "[o]rdinarily . . .  be granted when doing so will make trial of the action less complicated or otherwise streamline the ultimate resolution of the action.").

In this instance, striking Plaintiff's allegations of receiving an unsolicited fax will undoubtedly streamline this case.  It will remove groundless claims from the Complaint and avoid the cost of additional dispositive motions.  By way of illustration, in the *Forest Pharmaceuticals* matter, the defendants were forced to file multiple dispositive motions and endure numerous amendments of the complaint in order to remove the allegation of unsolicited faxes.  *See Forest Pharmaceuticals* (Doc # 17-19, 47-49, 62).  While the defendants in the *Forest Pharmaceuticals* case ultimately succeeded in having the unsolicited fax claims removed (and also forced Plaintiff to clean up the pleadings and dismiss improperly pled state law claims), that achievement came at a cost:   Defendants in the *Forest Pharmaceuticals* case spent approximately six months and considerable litigation expenses to achieve this result, not to mention the waste of the Court's resources.  Given the identical claims and similar nature of this case to *Forest Pharmaceuticals*, including many of the same parties, granting Defendants' motion to strike Plaintiff's obviously false unsolicited fax allegation will expedite this matter and allow this case to more promptly reach the same inevitable outcome.

Consequently, Defendants request that the Court strike Plaintiff's claims of receiving an unsolicited fax as obviously false.

**B.   Plaintiff's Claim For Conversion Fails As A Matter Of Law And Should Be Dismissed Or Stricken.**

Plaintiff's claim for conversion should be dismissed.  "Under Missouri law, to state a claim for conversion Plaintiff must plead facts supporting each of the following elements: '[1] that [it] was entitled to possession, [2] the defendant exercised unauthorized control and [3] the defendant deprived plaintiff of [its] right to possession.'" *Harmon v. H & R Block Tax and Business Services, Inc.*, 2013 WL 1769107, *3 (E.D. Mo. April 24, 2013) (quoting *Whipple v. Allen*, 324 S.W.3d 447, 450 (Mo. Ct. App. 2010).

At the outset, Plaintiff's conversion claim does not meet the standards set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Under *Twombly,* a plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 678-79.   Here, Plaintiff's conversion claim fails to meet these standards. [10]

In particular, a claim for conversion cannot rest on a *de minimis* injury.  Regardless of whether Plaintiff claims to have suffered any actual or nominal damages, its injury (presumably, the alleged loss of paper and toner for a single page fax) remains insignificant.  Under the

---

[10] Plaintiff's allegations of conversion primarily address the proposed class and say very little about Plaintiff's underlying claim.  However, as another federal court, which dismissed a claim for conversion in an unsolicited fax case, explained, "[c]umulative allegations of a putative class in a complaint cannot be used to prop up an otherwise trivial claim that is unable to stand on its own."  *Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 633 F. Supp. 2d 610, 614 (N.D. Ill. 2009).

- 15 -

doctrine *de minimis no curat lex* ("the law does not concern itself with trifles"), a court may find a claim "so inconsequential" as to "preclude[] its consideration." *John Wright & Associates, Inc. v. Ullrich*, 328 F.2d 474, 479 (8th Cir. 1964).  In this instance, it is difficult to imagine a less consequential claim for conversion.  As another federal court facing a conversion claim for an unsolicited fax explained: "[T]he ancient maxim '*de minimis no curat lex*' might well have been coined for this occasion."  *See Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006).[11]

Not surprisingly, federal courts have dismissed conversion claims for the alleged receipt of an unsolicited fax for failing to state claim.  *See, e.g.*, *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, 2012 WL 638765 (N.D. Ill. Feb. 23, 2012); *Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 633 F. Supp. 2d 610, 613 (N.D. Ill. 2009) (holding that a conversion claim based on a fax is trivial because damages are *de minimis* and the claim will not be entertained); *Rossario's Fine Jewelry, Inc.*, 443 F. Supp. 2d at 980 (dismissing claim alleging conversion of toner and paper).[12]

These courts have highlighted the fact that a plaintiff who has allegedly received a single-page fax has suffered at most only a *de minimis* injury.  As the court in *Old Town Pizza* explained, a claim for conversion based on a single page fax is not, under *Twombly*, plausible on its face:

> [T]he recovery for the damage suffered from the destruction of a sheet of paper is barred by the *de minimis* doctrine.  In the case at bar, Plaintiff has only alleged

---

[11] *See also Swick v. City of Chicago*, 11 F.3d 85 (7th Cir. 1993) (holding as outside the scope of legal relief the sort of injuries "normally small and invariably difficult to measure that must be accepted as the price of living in a civilized society rather than made a federal case out of.").

[12] *See also Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 130 P.3d 1280, 1287-88 (Nev. 2006) (dismissing a conversion claim based on an unsolicited fax and explaining that "any damage to Edwards' paper and toner that occurred from a single facsimile advertisement was merely technical and so inconsiderable as to require the application of the common-law doctrine *de minimis non curat lex*").

damage from conversion for a single sheet of paper and the toner used to produce the message on the paper.  Even drawing inferences of fact in favor of Plaintiff, the Plaintiff has failed to state a claim that is plausible on its face.  *Twombly*, 550 U.S. at 570.  Plaintiff's Count II for conversion is dismissed.

2012 WL 638765, at *4; *see also Quality Management and Consulting Services, Inc. v. SAR Orland Food, Inc.*, 2012 WL 2128327, *2 (N.D. Ill. June 11, 2012) ("The Court agrees with *Old Town Pizza's* conclusion that "[t]he severity of the interference, the inconvenience, and the expense Plaintiff alleges to have suffered is trivial and insufficient to support a conversion claim." *Id.* at *3.  The result is the same even though Quality Management received two additional faxes: even taken together, the loss of ink, paper, and toner remains minuscule.").

The same circumstances pertain to this case and require the same result.  Like the plaintiff in *Old Town Pizza*, Plaintiff here claims to have received "1 unsolicited facsimile." Complaint at ¶ 11.  That facsimile is a single sheet of paper, *see id.* at Exh. 1, for which Plaintiff claims to have suffered the loss of "paper and toner." *Id.* at ¶ 61.  As in *Old Town Pizza*, the loss of "a single sheet of paper and the toner used to produce the message on the paper" are allegations that "fail[] to state a claim [for conversion] that is plausible on its face." *Old Town Pizza*, 2012 WL 638765 at *4 (citing *Twombly*, 550 U.S. at 570).

Although this Court has, in one instance, declined to dismiss a conversion claim for the transmission of an unsolicited fax, *see Radha Geismann, M.D., P.C. v. Byram Healthcare Centers, Inc.*, 2010 WL 1930060 (E.D. Mo. May 10, 2010), the Court's reasoning in that case was flawed.   In *Radha Geismann*, this Court held that the possibility of obtaining "nominal damages" meant that "the *de minimis* defense is inapplicable in the present case and plaintiff may be entitled to damages, regardless of how minuscule they may be." *Id.* at *4.  This conclusion misinterprets the *de minimis* defense.   As the court in *Old Town Pizza* explained, "the concepts of nominal damages and the *de minimis* doctrine are separate and distinct":

> [T]he *de minimis* doctrine should not be conflated with the concept of nominal damages.  The *Centerline* court questioned whether the *de minimis* doctrine applied at all, noting that Illinois courts previously allowed conversion claims to be brought though the parties sought only nominal damages.  *Centerline*, 545 F. Supp. 2d at 782.  Nominal damages for conversion are properly awarded when the interference is severe enough to justify the payment of nominal damages, even if actual damages are absent. *See Stonecrafters*, 633 F. Supp. 2d at 614 ("Nominal damages presuppose a violation of sufficient gravity to merit a judgment even if significant damages cannot be proved" (citing *Brandt v. Bd. of Educ. of City of Chi.*, 480 F.3d 460, 465 (7th Cir.2007)). The concepts of nominal damages and the *de minimis* doctrine are separate and distinct.

2012 WL 638765 at *3.  Thus, before Plaintiff may recover even nominal damages, it must have a claim of "sufficient gravity."  *Id.*  In contrast, where "the *de minimis* doctrine applies . . . no amount of damages, nominal or otherwise, would be appropriate."  *Id.* (quoting *Stonecrafters*, 633 F. Supp. 2d at 613-615).

For the same reasons, Plaintiff's claim for conversion, if not already stricken,[13] should be dismissed.

### C.  Plaintiff's MPA Claim Fails As A Matter of Law And Should Be Dismissed Or Stricken.

Plaintiff, for its third count, asserts that "Defendants' unsolicited fax practice . . . violates public policy" and therefore the MPA.  Complaint ¶ 67.  Plaintiff is wrong as a matter of law.

The alleged transmission of an unsolicited fax does not constitute an unlawful practice under the MPA.  *See Missouri ex rel. Nixon v. Progressive Bus. Pub., Inc.*, 504 F. Supp. 2d 699, 707 (W.D. Mo. 2007) ("[P]laintiff's attempt to couch its TCPA claims within the MPA is improper, as the activities targeted by plaintiff are not the sort of actions that are tainted by conventional unfair practices or consumer fraud.  Thus, these actions are not covered by the

---

[13] Like Plaintiff's TCPA claim, Plaintiff's claim for conversion relies repeatedly on the obviously false allegation that Defendants sent "unsolicited faxes."  Complaint at ¶¶ 55 -61.  It should therefore be stricken on the same grounds set forth above. *See* Argument IV.A.2, infra.  Without this false allegation or receiving an unsolicited fax, Plaintiff cannot satisfy all the elements of a claim for conversion as Plaintiff could no longer allege that Defendants "exercised unauthorized control."  *Harmon*, 2013 WL 1769107 at *3.

MPA.  Plaintiff's claims, as pled in its petition, should be dismissed for failure to state a claim

upon which relief can be granted."); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,* 196 F. Supp.

2d 920, 934 (E.D. Mo. 2002) (even if defendant's conduct in sending unsolicited fax

advertisements violated the TCPA, defendant's conduct did not violate the MPA), *reversed on*

*other grounds,* 323 F.3d 649 (8th Cir. 2003).

  Moreover, even if the transmission of an unsolicited fax somehow constituted an

unlawful practice under the MPA, Plaintiff, as a business, lacks standing to sue.  "Section

407.025.1 creates a private right of action under the MPA in favor of [a]ny person who <u>purchases</u>

<u>or leases merchandise primarily for personal, family or household purposes</u> and thereby suffers

an ascertainable loss of money or property, real or personal as a result of the use or employment

by another person of a method, act or practice declared unlawful by section 407.020."

*Chochorowski v. Home Depot USA., Inc.,* 295 S.W.3d 194, 197-98 (Mo. Ct. App. 2009)

(emphasis added).  In order to state a claim for a violation of the MPA, Plaintiff is required to

allege, *inter alia,* that it (a) purchased or leased merchandise from the Defendants;  and (b) did so

for primarily personal, family, or household purposes.  *Id.* at 198.  Here, however, Plaintiff has

completely failed to allege that it "purchase[d] or lease[d] merchandise" from the Defendants or

that such merchandise, if any, was purchased "primarily for personal, family, or household

purposes."  *See, e.g., Saey v. CompUSA, Inc.,* 174 F.R.D. 448, 450 (E.D. Mo. 1997) (plaintiff

who purchased computer for business purposes lacked standing to allege MPA claim).

Accordingly, Plaintiff's MPA claim, to the extent it is even asserted,[14] is insufficient as a matter

of law and should be dismissed.[15]

---

[14] Claims brought under the MPA must meet the same pleading standards regarding specificity as common law fraud claims.  *See Mattingly v. Medtronic, Inc.*, 466 F. Supp. 2d 1170, 1173-74 (E.D. Mo. 2006); *Bmyo v. Philip Morris USA, Inc.*, 435 F. Supp. 2d 961, 968 (W.D. Mo. 2006).  In contrast, Plaintiff's nebulous allegations to support its

## V.      CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant this

motion and dismiss Plaintiff's Complaint with prejudice.  In the alternative, Defendant

respectfully requests that the Court strike the claims set forth therein.

Respectfully submitted,

THOMPSON COBURN LLP

By:/s/Christopher M. Hohn_____
   Christopher M. Hohn, # 44124
   One U.S. Bank Plaza, Suite 2600
   St. Louis, Missouri 63101
   (314) 552-6000 (telephone)
   (314) 552-7000 (facsimile)
   *chohn@thompsoncoburn.com*

*Attorneys for Defendant Gilead Palo Alto, Inc.*

   Jonathan K. Stock (OH 0065637)
   (jkstock@ocslawfirm.com)
   **Organ Cole + Stock llp**
   1335 Dublin Road, Suite 104D
   Columbus, Ohio  43215
   Telephone: 614.481.0900
   Facsimile: 614.481.0904

   Scott A. Carlson (IL ARDC 6228975)
   (scarlson@seyfarth.com)
   SEYFARTH SHAW LLP
   131 South Dearborn Street, Suite 2400
   Chicago, Illinois 60603
   Telephone: (312) 460.5000
   Facsimile: (312) 460.7946

*Of Counsel for Defendant Gilead Palo Alto, Inc.*

---

MPA claim are limited to two substantive paragraphs (excluding allegations addressed to the class) and those paragraphs fall well short of the heightened pleading standard applicable to such claims.  *See* Complaint at ¶¶67-68.

[15] In the alternative, Plaintiff's MPA claim should be stricken as it too relies on the obviously false allegation that Defendants sent "unsolicited faxes."  Complaint at ¶¶ 67 and 70; *see also* Argument IV.A.2, *infra*.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By: /s/ Dale M. Weppner (with consent)
    Dale M. Weppner (MO 41080)
    10 South Broadway, Suite 2000
    St. Louis, MO  63102
    Telephone: 314.241.9090
    Facsimile: 314.241.8624
    (dmw@greensfelder.com)

    Patrick T. Clendenen
    Nelson Mullins Riley & Scarborough LLP
    One Post Office Square
    30th Floor
    Boston, MA  02109
    Telephone: 617.573.4700
    Facsimile: 617.573.4710
    (patrick.clendened@nelsonmullins.com)
    (*Pro Hac Vice* to be filed)

*Counsel for Defendant The Peer Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing was filed electronically with the Clerk of the Court to be served via operation of the Court's electronic filing system this 18th day of June, 2013, to all counsel of record.


<u>/s/ Christopher M. Hohn</u>